UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| AMANDA DAWN HUGHES, Individually and in Her Capacity as Administratrix and Personal Representative of the Estate of Jayse Ryan Hughes, and WENDEL HUGHES, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. CIV 03-367-P |
| v. | ) ) | LEAD |
| GLOCK, INC., | ) ) ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| AMANDA DAWN HUGHES, Individually and in Her Capacity as Administratrix and Personal Representative of the Estate of Jayse Ryan Hughes, and WENDEL HUGHES, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. CIV 04-485-P |
| v. | ) ) | MEMBER |
| GLOCK, GES.M.B.H. and GASTON GLOCK, | ) ) ) | |
| Defendants. | ) | |

### SUPPLEMENTAL REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF GASTON GLOCK'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Defendant Gaston Glock respectfully submits this supplemental reply memorandum of law in further support of his October 18, 2005 motion to dismiss plaintiffs' complaint for lack of personal jurisdiction and failure to state a claim upon which relief can be granted pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure.

### ARGUMENT

Gaston Glock moved to dismiss plaintiffs' complaint against him for lack of personal jurisdiction and failure to state a claim upon which relief can be granted on October 18, 2005, and

submitted an affidavit in support thereof. In his affidavit, Gaston Glock unequivocally set forth his complete lack of contacts with the State of Oklahoma: Gaston Glock is a citizen and resident of Austria and has never been a citizen or resident of Oklahoma. *See* Glock 8/11/05 Aff. ¶¶ 2-3. He does not have a registered agent for service of process in Oklahoma, and has never owned any real or personal property in Oklahoma. *Id.* ¶¶ 4-6. He has never had an office, bank account, mailing address, telephone or facsimile listing in Oklahoma. *Id.* ¶¶ 7-10. He has never conducted or solicited business in Oklahoma and has never placed an advertisement in, or directed to, Oklahoma. *Id.* ¶¶ 14-16. He has never offered anything for sale in, or purchased anything from, Oklahoma. *Id.* ¶¶ 12-13. He has never been an officer, shareholder or employee of a company that is incorporated in, or that has an office in, Oklahoma. Glock 8/11/05 Aff. ¶ 17. He has no employees or family members in Oklahoma. *Id.* ¶¶ 18-19. He does not have, and has never had, a website that could be accessed by someone in Oklahoma. *Id.* ¶ 11.

In opposing Gaston Glock's motion to dismiss, plaintiffs represented to this Court that they needed to depose him so that they could "more fully refute Gaston Glock's Affidavit and establish that personal jurisdiction in Oklahoma over defendant Gaston Glock is proper." Pls.' Opening Resp. to Def. Gaston Glock's Mot. to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim Upon Which Relief Can Be Granted at 10. This Court accordingly permitted plaintiffs to depose Gaston Glock regarding his contacts with the State of Oklahoma in order to obtain further information to oppose his motion to dismiss for lack of personal jurisdiction. The deposition was conducted on December 19, 2005, and resulted in excess of 170 pages of transcribed testimony from which plaintiffs have quoted extensively in their Supplement to Response Opposing Gaston Glock's Motion to Dismiss. Yet during this deposition, counsel for plaintiffs posed only one question related

to Gaston Glock's contacts *vel non* with Oklahoma:

    Q. (By Mr. Goff) Have you ever been to Oklahoma?

    A. No.

Glock 12/19/05 Dep. at 71.[1] The December 19, 2005 deposition of Gaston Glock only confirmed that there is no legal or factual basis for this Court to exercise personal jurisdiction over Gaston Glock. Despite the fact that plaintiffs can be afforded the entire relief that they seek in their complaint if they are successful in their claims against the manufacturer and seller of the subject pistol (Glock Ges.m.b.H. and Glock, Inc.) and their glaring failure to refute the lack of contacts with Oklahoma that Gaston Glock set forth in his affidavit, plaintiffs still stubbornly refuse to withdraw their baseless argument that Gaston Glock is subject to personal jurisdiction in Oklahoma.

One useful piece of information that was gleaned during the deposition of Gaston Glock, however, is the real basis of plaintiffs' untenable argument as to why they believe this Court can constitutionally exercise personal jurisdiction over Gaston Glock:

> Mr. Goff: I think you're ducking the real guts of the issues here. This guy has total control of everything that exists, and that is going to hook him past the bar on personal jurisdiction in this case, and you know that.
>
>     \*        \*        \*        \*
>
> Mr. Goff: That's my argument.

Glock 12/19/05 Dep. at 93. In their Supplement to Response Opposing Gaston Glock's Motion to

---

[1] The transcript of the December 19, 2005 deposition of Gaston Glock is attached as Exhibit 1 to the Plaintiffs' Supplement to Response Opposing Gaston Glock's Motion to Dismiss. Plaintiffs did not pose any other questions to him regarding the facts set forth in his affidavit and have not even attempted to refute any of the facts set forth therein.

Dismiss,[2] plaintiffs base their argument that this Court may constitutionally exercise personal jurisdiction over Gaston Glock on two theories (1) alter ego and (2) joint venture. The facts relied upon by plaintiffs in support of their argument that Glock, Inc. and Glock Ges.m.b.H. are the alter egos of Gaston Glock and that he is engaged in a joint venture with Glock Ges.m.b.H. and Glock, Inc. such that their contacts with Oklahoma can be imputed to him and allow this Court to constitutionally exercise personal jurisdiction over him are as follows:

(1)   Gaston Glock is the Chairman of Glock Ges.m.b.H. (the Austrian equivalent of President).

(2)   At the time of the incident Gaston Glock owned 85% of the stock of Glock Ges.m.b.H. and his wife owned the remaining 15%.

(3)   At present, Gaston Glock and his wife each own 1% of the stock in Glock Ges.m.b.H. with the remaining 98% owned by a foundation known as Glock Privatstiftung.

(4)   As Chairman, Gaston Glock makes the major decisions at Glock Ges.m.b.H.

(5)   Glock Ges.m.b.H. owns 50% of the stock of Glock, Inc.

(5)   Gaston Glock was the President of Glock, Inc. until 2003.

(6)   When he was the President, Gaston Glock made the major decisions at Glock, Inc.

(7)   Gaston Glock designed the Glock model pistols and was issued patents therefor.

---

[2]Although Plaintiffs' Supplement to Response Opposing Gaston Glock's Motion to Dismiss was filed with the Clerk of this Court on January 9, 2006 and the certificate of service appended thereto indicated that it had been served on counsel for defendants by certified mail that day, it was not actually served on counsel for defendants until January 11, 2006.

 (8) Gaston Glock licensed his patent rights in the Glock model pistols to Glock Ges.m.b.H. and Glock, Inc. in exchange for royalty payments based on their sale of Glock model pistols.

Pls.' Supp. to Resp. Opposing Gaston Glock's Mot. to Dismiss at 2-18.

 Based on these facts, plaintiffs jump to the incredulous conclusions that Glock Ges.m.b.H. and Glock, Inc. "are a sham and the bare alter ego of Gaston Glock" and that Glock Ges.m.b.H., Glock, Inc. and Gaston Glock "are clearly joint venturers, working together for one common goal. The contacts of one are the contacts of all." Pls.' Supp. to Resp. Opposing Gaston Glock's Mot. to Dismiss at 11. When Oklahoma law regarding the requirements for the application of these doctrines is examined, it becomes clear that the facts relied upon by plaintiffs are clearly insufficient to establish liability pursuant to the alter ego or joint venture doctrines and cannot be used as the basis to subject Gaston Glock to personal jurisdiction in Oklahoma. Nonetheless, plaintiffs are not without recourse should they ultimately prevail in this case: the manufacturer and distributor of the subject pistol are before this Court.

### Gaston Glock is Not Subject to Personal Jurisdiction in Oklahoma Pursuant to the Alter Ego Doctrine

 Unable to show that Gaston Glock has any contacts with the State of Oklahoma, plaintiffs now seek to impute any contacts that Glock, Inc. and Glock Ges.m.b.H. may have with Oklahoma to him pursuant to the alter ego doctrine. As noted by the U.S. Court of Appeals for the Tenth Circuit, however, Oklahoma law regarding the alter ego doctrine only "permits the court to disregard the corporate entity if used, (1) to defeat public convenience, (2) justify wrong, (3) to perpetrate fraud, whether actual or implied, or (4) to defend crime." *Robertson v. Roy L. Morgan Production Co.*, 411 F.2d 1041, 1043 (10th Cir. 1969) (noting that sole ownership of a company is not sufficient

5

for alter ego liability). Oklahoma law is clear that the mere fact that a corporation is privately owned does not satisfy the requirements of the alter ego doctrine. *Sautbine v. Keller*, 423 P.2d 447, 451-452 (Okla. 1966) (holding that "even a family corporation is a separate and distinct entity from its shareholders"); *Gulf Corp. v. State*, 360 P.2d 933, 936 (Okla. 1961); *Mid-Continent Life Ins. Co. v. Goforth*, 143 P.2d 154, 157 (Okla. 1943) (observing that a "corporation is an entity separate and apart from the persons composing it" and its "distinct existence" will only be disregarded "when necessary to circumvent fraud, protect the rights of third persons, and accomplish justice"); *Buckner v. Dillard*, 89 P.2d 326, 329 (Okla. 1939) ("A recognized purpose of a corporation is to permit persons to avoid personal liability either entirely or beyond a statutory amount."); *Wallace v. Tulsa Yellow Cab Taxi & Baggage Co.*, 61 P.2d 645, 648 (Okla. 1936) (noting that the mere fact that a person "may be in a position to exercise controlling influence through the ownership of stock" does not make the corporation his alter ego); *King v. Modern Music Co.*, 33 P.2d 947, 952 (Okla. Ct. App. 2001); *Warner v. Hillcrest Healthcare Corp.*, 914 P.2d 1060, 1067 n.5 (Okla. Ct. App. 1995); *Thomas v. Nutmeg Corp.*, 900 P.2d 458, 460-461 (Okla. Ct. App. 1995) (stating that imposing liability pursuant to the alter ego doctrine is "an extraordinary remedy to be used sparingly"); *Oklahoma Oil & Gas Exploration Drilling Program v. W.M.A. Corp.*, 877 P.2d 605, 609 (Okla. Ct. App. 1994) (noting that to "establish the 'alter ego' doctrine it must be shown that the stockholders' disregard of the corporate entity made it a mere instrumentality for the transaction of their own affairs; that there is such unity of interest and ownership that the separate personalities of the corporation and the owners no longer exist; and to adhere to the doctrine of corporate entity would promote injustice or protect fraud" and fact that defendant was the incorporator, president and sole shareholder and director was insufficient); *Matter of Estate of Rahill*, 827 P.2d 896, 897 (Okla. 1992).

6

The facts relied upon by plaintiffs establish nothing more than that Gaston Glock is the chief executive officer of a privately held Austrian corporation; plaintiffs have not even attempted to satisfy the requirements of the alter ego doctrine. Plaintiffs have not come forward with any evidence that Gaston Glock used Glock Ges.m.b.H. or Glock, Inc. to defeat public convenience, justify a wrong, perpetrate fraud or defend crime as required to satisfy the requirements of the alter ego doctrine. *Robertson*, 411 F.2d at 1043. The deposition only added support and confirmed the fact that Glock, Inc. and Glock Ges.m.b.H. are not the alter egos of Gaston Glock:[3]

In addition to Gaston Glock, there were three other initial officers of Glock, Inc. Glock 12/19/05 Dep. at 27-29. When he was President, Gaston Glock only made the major decisions at Glock, Inc.; normal business decisions were made by senior management who handled the daily operations. *Id.* at 29, 35-36. Senior management at Glock, Inc. could hire and fire employees without Gaston Glock's knowledge. *Id.* at 162. Gaston Glock retired as President of Glock, Inc. in 2003. *Id.* at 32. Glock, Inc. is presently run by a board of directors that consists of the President and two Vice-Presidents. *Id.* at 58-59. The Vice-Presidents of Glock, Inc. were hired by the current President of Glock, Inc. Glock 12/19/05 Dep. at 59-61. Half of the stock in Glock, Inc. is currently owned by Glock Ges.m.b.H.; the remaining half is owned by a German investment company. *Id.* at 41. Ninety-eight percent of Glock Ges.m.b.H. is owned by the Glock Privatstiftung, which is run by a three member board of directors. *Id.* at 52-55. Gaston Glock and his wife each own one percent of Glock Ges.m.b.H. *Id.* at. 51-52. At present there is no overlap of employees or officers between Glock Ges.m.b.H. and Glock, Inc. *Id.* at 87, 159. Gaston Glock never advanced money to Glock, Inc. Glock 12/19/05 Dep. at 39. Glock Ges.m.b.H., Glock, Inc. and Gaston Glock all have

---

[3]Gaston Glock reviewed his affidavit during his deposition and confirmed its truth and accuracy. Glock 12/19/05 Dep. at 157-158.

separate bank accounts and do not intermingle their funds. *Id.* at 158-159. Glock, Inc. is not dependent upon Glock Ges.m.b.H. for its existence. *Id.* at 161-162. The evidence is undisputed that, at all times, Glock, Inc. and Glock Ges.m.b.H. followed all corporate formalities. Glock 8/11/05 Aff. ¶ 32; Glock 12/19/05 Dep. at 157-158.

Accordingly, plaintiffs' attempt to subject Gaston Glock to personal jurisdiction in Oklahoma based on the alter ego doctrine is without basis in law and fact and should be rejected.

<b><u>Gaston Glock is Not Subject to Personal Jurisdiction<br>in Oklahoma Pursuant to the Joint Venture Theory</u></b>

Plaintiffs' attempt to impute any contacts that Glock, Inc. and Glock Ges.m.b.H. have with Oklahoma to Gaston Glock through the joint venture theory is similarly unavailing.[4] "A joint venture has been defined in Oklahoma as a special combination of two or more persons where in some specific venture a profit is jointly sought without any partnership or corporate designation." *LeFlore v. Reflections of Tulsa, Inc.*, 708 P.2d 1068, 1072 (Okla. 1985). *See also Parks v. Riverside Ins. Co. of America*, 308 F.2d 175, 177 (10th Cir. 1962) (noting that "under Oklahoma law a joint adventure contemplates a single transaction, while a partnership contemplates the operation of a general business"); *Albina Engine & Machine Works, Inc. v. Safway Rental & Sales Co.*, 305 F.2d

---

[4]It should be noted that plaintiffs do not cite any Oklahoma law stating that a defendant may be subjected to personal jurisdiction based on a co-venturer's contacts with the forum state, but rather rely on case law from Illinois, Louisiana and New York. Yet even two of the cases cited by plaintiffs explicitly note that the joint venture doctrine is inapplicable in a corporate context. *See Nolan v. Boeing Co.*, 736 F. Supp. 120, 127 (E.D. La. 1990) ("A joint venture cannot exist where the business or enterprise is organized and operated in corporate form.") and *Itel Containers Int'l Corp. v. Atlanttrafik Express Service, Ltd.*, 116 F.R.D. 477, 480 (S.D.N.Y. 1987) (noting that a joint venture only arises in the absence of a "formal partnership or corporate designation"), cited in Pls.' Supp. to Resp. Opposing Gaston Glock's Mot. to Dismiss at 21. In the present case there is no dispute that the relationship between Gaston Glock and Glock Ges.m.b.H. and Glock, Inc. is corporate; accordingly even if the out-of-state law cited by plaintiffs were applied, the requirements of the joint venture theory would still not be met.

77, 81 (10th Cir. 1962); *McGee v. Alexander*, 37 P.3d 800, 805-806 (Okla. 2001); *Rollins v. Rayhill*, 191 P.2d 934, 934 (Okla. 1948); *Sinker v. Johnson*, 178 P.2d 608, 609 (Okla. 1947); *Feagin v. Champion*, 155 P.2d 518, 520 (Okla. 1945); *Commercial Lumber Co. v. Nelson*, 72 P.2d 829, 830 (Okla. 1937) (noting that the "chief characteristic of a joint venture" is a "profit jointly sought in a single transaction"); *Coryell v. Marrs*, 70 P.2d 478, 479 (Okla. 1937); *Madwine v. Osage Supply Co.*, 58 P.2d 131, 133 (Okla. 1936) (noting that a joint venture is usually limited to a single transaction); *E.D. Bedwell Coal Co. v. State Indus. Comm'n*, 11 P.2d 527, 527 (Okla. 1932); *McKeel v. Mercer*, 246 P. 619, 622 (Okla. 1926). The reason that a joint venture does not arise where there is a corporate designation between the parties is because it creates a relationship that "is analogous to, but not identical with, a partnership" and the "law of partnership and of principal and agent underlies the conduct of a co-adventurer and governs the rights and liabilities of co-adventurers and third parties. . . ." *Martin v. Chapel, Wilkinson, Riggs, & Abney*, 637 P.2d 81, 85-86 (Okla. 1981). The justification for the joint venture theory is simply unnecessary when a corporate designation already governs the rights and liabilities of the alleged co-adventurers between themselves and third parties.

In the present case, Gaston Glock is clearly not involved in a "joint venture" with Glock Ges.m.b.H. and Glock, Inc.; the relationship between them is corporate. Plaintiffs creatively argue that "[i]t is true that some cases state that a joint venture exists in the absence of a formal partnership or corporate designation, as alleged by Gaston Glock. However the fact that two parties are otherwise related does not mean that they cannot engage in a joint enterprise." Pls.' Supp. to Resp. Opposing Gaston Glock's Mot. to Dismiss at 22. In support of their misleading statement, the plaintiffs seek to overcome eight decades of precedent from the Oklahoma Supreme Court by relying entirely on a district court case from the Seventh Circuit that was applying the law of Illinois. The

applicable law is that of the forum state, however, and binding precedent from the Oklahoma Supreme Court provides that pursuant to Oklahoma law, the joint venture theory is only applicable in the absence of a "partnership or corporate designation."[5] *LeFlore*, 708 P.2d at 1072. Inasmuch as the relationship between Gaston Glock and Glock Ges.m.b.H. and Glock, Inc. is corporate, plaintiffs may not avail themselves of the joint venture doctrine to create the requisite minimum contacts between Gaston Glock and Oklahoma.

Due to the fact that Gaston Glock does not have any contacts with the State of Oklahoma and the plaintiffs have failed to satisfy the requirements to have any contacts between Glock, Inc. or Glock Ges.m.b.H. and Oklahoma imputed to him pursuant to either the alter ego or joint venture theories, this Court may not constitutionally exercise personal jurisdiction over him. Accordingly, defendant Gaston Glock respectfully requests that the complaint be dismissed against him on the basis that this Court lacks personal jurisdiction over him.

## CONCLUSION

For the above reasons, defendant Gaston Glock respectfully requests that the complaint be dismissed against him on the bases that this Court lacks personal jurisdiction over him and the

---

[5]Furthermore, plaintiffs have not explained why, in the theoretical absence of a corporate relationship between Gaston Glock and Glock Ges.m.b.H. and Glock, Inc., the joint venture doctrine would govern as opposed to general partnership law, given that the facts relied upon by plaintiffs do not constitute a single transaction, but rather the general operation of a business. *Parks*, 308 F.2d at 177; *Commercial Lumber*, 72 P.2d at 830; *Madwine*, 58 P.2d at 133. In addition, the plaintiffs have elicited no support or testimony that there is an agreement between Gaston Glock and Glock Ges.m.b.H. and/or Glock, Inc. to share losses, separate and apart from the normal corporation/shareholder relationship. *Crest Constr. Co. v. Insurance Co. of North America*, 417 F. Supp. 564, 569 (W.D. Okla. 1976) (observing that in order for a joint venture to arise, "it is necessary that the parties agree to share both in the profits and losses of the enterprise" and holding that the possibility of losing a share of the profits is "not sufficient to constitute a sharing of the loses of the enterprise"); *King*, 33 P.2d at 956 (noting that the profit sharing requirement of the joint venture doctrine was not met by the receipt of a share of the proceeds from vending machines that a landlord rented to its tavern tenant).

complaint fails to state a cause of action against him upon which relief can be granted, and such other, further, and different relief as this Court deems just and proper.

Dated: Oklahoma City, Oklahoma
       January 24, 2006

Respectfully submitted,

Gary M. Chubbuck, OBA No. 1682
Mark McAlester OBA No. 18104
FENTON, FENTON, SMITH, RENEAU & MOON
211 North Robinson, Suite 800N
Oklahoma City, OK 73102
Telephone: (405) 235-4671
Facsimile: (405) 235-5247

John F. Renzulli (*pro hac vice*)
Christopher Renzulli (*pro hac vice*)
Paul Indig (*pro hac vice*)
RENZULLI LAW FIRM, LLP
300 East 42nd Street, 17th Floor
New York, NY 10017-5947
Telephone: (212) 599-5533
Facsimile: (212) 599-6385

***Attorneys for Defendant Gaston Glock***

11

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of January, 2006, I mailed a copy of the above Supplemental Reply in the United States Mails, postage prepaid, to the following attorneys of record:

Frederick J. Hegenbart, Esq.
Kent B. Rainey, Esq.
ROSENSTEIN, FIST & RINGOLD
525 S. Main, Suite 700
Tulsa, OK 74103-4508

A. Kennon Goff, III
Goff and Goff
612 North Vienna Street
Ruston, LA 71273-2050

Robert S. Blatt
19 Court Street
PO Box 1825
Fort Smith, AR

**ATTORNEYS FOR PLAINTIFFS**

/s/ J. Mark McAlester
J. Mark McAlester